UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| SAUL SALINAS, Individually and For Others Similarly Situated<br><br>v.<br><br>S.E.S.A. FLEET SERVICES, LLC | Case No. 7:23-cv-00279<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.  Salu Salinas (Salinas) brings this class and collective action lawsuit to recover unpaid overtime wages and other damages from S.E.S.A. Fleet Services, LLC (SESA).

2.  SESA employed Salinas as one of its Straight Time Employees (defined below) in Pennsylvania.

3.  SESA paid Salinas and the other Straight Time Employees by the hour.

4.  The Straight Time Employees regularly worked more than 40 hours a week.

5.  But SESA did not pay its Straight Time Employees overtime.

6.  Instead, SESA paid the Straight Time Employees the same hourly rate for all hours worked, including those after 40 in a workweek (or "straight time for overtime").

7.  SESA's uniform straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA) by depriving the Straight Time Employees of the "time and a half" overtime pay they are owed for all hours worked after 40 in a workweek.

8.  Likewise, SESA's uniform straight time for overtime pay scheme violates the Pennsylvania Wage Payment and Collection Laws (PWPCL) by depriving the Straight Time Employees of all wages (including overtime wages) due, earned, and owed to them.

1

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11. This Court has general personal jurisdiction over SESA because SESA is a domestic limited liability company that maintains its headquarters in Weslaco, Texas.

12. Venue is proper because SESA maintains its headquarters in Weslaco, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Salinas worked for SESA as a Mechanic in Pennsylvania from approximately November 2014 until May 2022.

14. Throughout his employment, SESA paid Salinas straight time for overtime.

15. Salinas's written consent is attached as **Exhibit 1**.

16. Salinas brings this action on behalf of himself and all other similarly situated employees who SESA paid under its straight time for overtime pay scheme.

17. SESA paid each of these employees the same hourly rate for all hours worked, including those worked after 40 hours in a workweek.

18. The FLSA Collective of similarly situated employees is defined as:

> **All SESA employees who were paid straight time for overtime at any time during the past 3 years ("FLSA Collective Members").**

19. Salinas also seeks to represent such a class under the PMWA and PWPCL pursuant to FED. R. CIV. P. 23.

20. The Pennsylvania Class of similarly situated employees is defined as:

> **All SESA employees who were paid straight time for overtime while working in Pennsylvania at any time during the past 3 years ("Pennsylvania Class Members").**

21. The FLSA Collective Members and Pennsylvania Class Members are collectively referred to as the "Straight Time Employees."

22. SESA is a Texas limited liability company that maintains its headquarters in Weslaco, Texas.

23. SESA may be served with process by serving its registered agent: **Florentino Vela, 1702 Cart Street, Weslaco, Texas 78596**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

24. At all relevant times, SESA was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25. At all relevant times, SESA was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26. At all relevant times, SESA was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, vehicles, tools, equipment, and personal protective gear—that have been moved in or produced for commerce.

27. At all relevant times, SESA has had an annual gross volume of sales made or business done of not less than $500,000 each year.

28. At all relevant times, the Straight Time Employees were SESA's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

29. At all relevant times, the Straight Time Employees were engaged in commerce or in the production of goods for commerce.

30. SESA uniformly paid the Straight Time Employees the same hourly rate for all hours worked, including those after 40 in a workweek.

31. As a result of SESA's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, include Salinas) did not receive overtime at the premium rates required by the FLSA.

32. SESA applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

33. By paying the Straight Time Employees straight time for overtime, SESA did not pay the Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

34. SESA's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

35. SESA "provide[s] comprehensive fleet maintenance services[,]" to its oil and gas industry clients' vehicles and equipment across the country, including in Pennsylvania.[1]

36. To meet its business objectives, SESA hires workers, like the Straight Time Employees, to provide on-site maintenance and repair services to its oil and gas industry clients' vehicles and equipment.

37. SESA pays its Straight Time Employees on an hourly basis.

---

[1] https://www.sesafleetservices.com/ (last visited August 22, 2023).

38. SESA routinely schedules its Straight Time Employees to work more than 40 hours a week.

39. Instead of paying its Straight Time Employees at 1.5 times their regular rates of pay for hours worked after 40 in a workweek, SESA pays them same hourly rate for all hours worked.

40. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practice for similar work.

41. For example, Salinas worked SESA as a Mechanic in Pennsylvania from approximately November 2014 until May 2022.

42. As a Mechanic, Salinas's primary responsibilities include performing maintenance and repair work on vehicles owned by SESA's client, Haliburton.

43. SESA paid him under its illegal straight time for overtime pay scheme.

44. Specifically, SESA required Salinas to record his hours worked and paid him the same hourly rate (approximately $15/hour) for all hours worked, including those worked after 40 in a workweek.

45. SESA requires all its Straight Time Employees to record the number of hours they work.

46. SESA never paid the Straight Time Employees on a "salary basis."

47. SESA did not pay its Straight Time Employees a guaranteed salary that was not subject to deductions.

48. If the Straight Time Employees work fewer than 40 hours, SESA only pays them for the hours they actually work.

49. For example, during the one week pay period ending on March 17, 2020, Salinas only worked 30 hours, and SESA only paid him for his actual hours worked:

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Straight Time | 30:00 | 15.00 | 450.00 | 11,610.00 |
| Company Trainings | | | | 90.00 |
| Holiday | | | | 240.00 |
| Travel | | | | 360.00 |
| Stand By | | | | 120.00 |
| | 30:00 | | 450.00 | 12,420.00 |

50. But Salinas and the other Straight Time Employees regularly work more than 40 hours in a workweek.

51. Salinas worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

52. Likewise, each Straight Time Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

53. Indeed, Salinas and the Straight Time Employees typically work 10+ hours a day, for 7 days a week.

54. Salinas and the other Straight Time Employees work in accordance with the schedule set by SESA (and/or its clients).

55. When Salinas and the Straight Time Employees work more than 40 hours in a workweek, SESA does not pay them overtime at rates not less than 1.5 times their regular rates of pay.

56. SESA only pays Salinas and the Straight Time Employees straight time for overtime.

57. Despite misclassifying Salinas and the Straight Time Employees as exempt, Salinas and the other Straight Time Employees primarily perform non-exempt job duties.

58. The Straight Time Employees' primary duties do not include supervising other SESA employees.

59. The Straight Time Employees' primary duties are not management.

6

60. The Straight Time Employees' primary duties do not require the exercise of independent judgment or discretion with respect to matters of significance.

61. Rather, the Straight Time Employees' primary duties are routine and largely governed by standardized plans, procedures, and checklists created by SESA.

62. Virtually every job function is predetermined by SESA, including the tools and equipment used, the maintenance and repairs completed, the schedule of work, and related work duties.

63. Indeed, the Straight Time Employees' primary duties include performing on-site maintenance and repair work on vehicles and equipment owned by SESA's oil and gas industry clients.

64. SESA and the clients to which the Straight Time Employees provide maintenance and repair services are separate and distinct entities.

65. The Straight Time Employees are not employees of SESA's clients to which they are assigned to provide vehicle maintenance and repair services.

66. Likewise, the vehicles and equipment the Straight Time Employees maintain and repair are not owned, leased, controlled, or operated by SESA.

67. And SESA is not a "motor carrier" or "private motor carrier" within the meaning of the Motor Carrier Act.

68. In sum, Salinas and the Straight Time Employees are non-exempt employees and, therefore, entitled to overtime wages.

69. But SESA does not pay these non-exempt employees, including Salinas and the other Straight Time Employees, overtime wages when they work more than 40 hours in a workweek in violation of the FLSA and/or PMWA.

70. Likewise, under SESA's uniform straight time for overtime pay scheme, the Straight Time Employees are deprived of wages (including overtime wages) due, earned, and owed to them in violation of the PWPCL.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

71. Salinas incorporates all other paragraphs by reference.

72. Salinas brings his claims as a class and collective action on behalf of himself and the other Straight Time Employees.

73. The Straight Time Employees are uniformly victimized by SESA's straight time for overtime pay scheme, which is in willful violation of the FLSA, PMWA, and PWPCL.

74. Other Straight Time Employees worked with Salinas and indicated they were paid in the same manner, performed similar work, and were subject to SESA's same straight time for overtime pay scheme.

75. Based on his experience with SESA, Salinas is aware SESA's illegal practices were imposed on the Straight Time Employees.

76. The Straight Time Employees are similarly situated in all relevant respects.

77. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

78. Any relevant exemption defenses would require SESA to pay the Straight Time Employees on a salary basis.

79. Because SESA fails the salary basis test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

80. The relevant job duty is whether the Straight Time Employees worked more than 40 hours in a week (which, by definition, they did).

81. Therefore, the specific job titles or precise job locations of the various Straight Time Employees do not prevent class or collective treatment.

82. Rather, SESA's uniform straight time for overtime pay scheme renders Salinas and the other Straight Time Employees similarly situated for the purposes of determining their right to overtime pay.

83. SESA's records reflect the number of hours worked each week by the Straight Time Employees.

84. SESA's records also show the Straight Time Employees were paid "straight time," instead of "time and a half," for their overtime hours.

85. The back wages owed to Salinas and the other Straight Time Employees can therefore be calculated using the same formula applied to the same records.

86. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SESA's records, and there is no detraction from the common nucleus of liability facts.

87. Therefore, the issue of damages does not preclude class or collective treatment.

88. Salinas's experiences are therefore typical of the experiences of the Straight Time Employees.

89. Salinas has no interest contrary to, or in conflict with, the Straight Time Employees.

90. Like each Straight Time Employee, Salinas has an interest in obtaining the unpaid wages owed under federal and/or state law.

91. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

92. Absent this class and collective action, many Straight Time Employees will not obtain redress for their injuries, and SESA will reap the unjust benefits of violating the FLSA, PMWA, and PWPCL.

93. Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

94. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

95. The questions of law and fact that are common to each Straight Time Employee predominate over any questions affecting solely the individual members.

96. Among the common questions of law and fact are:

   a. Whether SESA applied its straight time for overtime pay scheme uniformly to the Straight Time Employees;

   b. Whether SESA misclassified Salinas and the Straight Time Employees as exempt from the FLSA's and/or PMWA's overtime provisions;

   c. Whether Salinas and the Straight Time Employees are non-exempt employees entitled to overtime wages;

   d. Whether SESA's straight time for overtime pay scheme satisfies the "salary basis" test;

   e. Whether SESA's straight time for overtime pay scheme deprived Salinas and the Straight Time Employees of premium overtime wages they are owed under the FLSA and/or PMWA;

   f. Whether SESA's straight time for overtime pay scheme deprived Salinas and the Straight Time Employees of all wages (including overtime wages) earned, due, and owed to them in violation of the PWPCL;

  g. Whether SESA's violations of the FLSA, PMWA, and/or PWPCL resulted from a continuing course of conduct;

  h. Whether SESA's decision to classify Salinas and the Straight Time Employees as exempt from overtime was made in good faith;

  i. Whether SESA's decision not to pay Salinas and the Straight Time Employees overtime was made in good faith;

  j. Whether SESA's decision not to pay Salinas and the Straight Time Employees all wages (including overtime wages) earned, due, and owed to them was made in good faith; and

  k. Whether SESA's violations of the FLSA, PMWA, and/or PWPCL were willful.

97. Salinas knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

98. As part of its regular business practices, SESA intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, PMWA, and PWPCL with respect to the Straight Time Employees.

99. SESA's illegal straight time for overtime pay scheme deprived Salinas and the other Straight Time Employees of the premium overtime wages they are owed under state and/or federal law.

100. Likewise, SESA's illegal straight time for overtime pay scheme deprived Salinas and the other Straight Time Employees of wages (including overtime wages) earned, due, and owed to them in violation of the PWPCL.

101. There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

102. This notice should be sent to the Straight Time Employees pursuant to 29 U.S.C. § 216(b).

103. The Straight Time Employees are known to SESA, are readily identifiable, and can be located through SESA's business and personnel records.

### SESA'S WAGE VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA, PMWA, AND/OR PWCL

104. Salinas incorporates all other paragraphs by reference.

105. SESA knew it was subject to the FLSA's and PMWA's respective overtime provisions.

106. SESA knew the FLSA and PMWA required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

107. SESA knew it was subject to the PWPCL.

108. SESA knew the PWPCL required it to pay employees, including the Straight Time Employees, all wages (including overtime wages) earned, due, and owed to them on their regular pay days.

109. SESA knew each Straight Time Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed because it expected and required these workers to do so.

110. SESA knew the Straight Time Employees were its hourly employees.

111. SESA knew it paid the Straight Time Employees on an hourly basis.

112. SESA knew it paid the Straight Time Employees straight time for overtime.

113. SESA knew it did not pay the Straight Time Employees on a "salary basis."

114. SESA knew it did not pay the Straight Time Employees any guaranteed salary that was not subject to deduction based on the number of hours or days worked.

115. SESA knew its straight time for overtime pay scheme did not satisfy the salary basis test.

116. SESA knew it needed to pass the salary basis test to qualify for the exemptions it claimed with respect to the Straight Time Employees.

117. SESA knew the Straight Time Employees' primary duties do not include supervising any SESA employees.

118. SESA knew Salinas and the Straight Time Employees' primary duties were not management.

119. SESA knew the Straight Time Employees' primary duties do not include exercising independent discretion or judgment with respect to matters of significance.

120. SESA knew the Straight Time Employees primarily performed non-exempt work.

121. SESA knew it and its clients were separate and distinct entities.

122. SESA knew that the Straight Time Employees were not employees of SESA's clients to which they were assigned to provide maintenance and repair services.

123. SESA knew the vehicles and equipment the Straight Time Employees maintained and repaired were owned, leased, controlled, and/or operated by SESA's clients—not SESA.

124. SESA knew it was not a motor carrier within the meaning of the Motor Carrier Act.

125. SESA knew it was not a private motor carrier within the meaning of the Motor Carrier Act.

126. Nonetheless, SESA uniformly misclassified the Straight Time Employees as exempt and refused to pay them overtime.

127. SESA's decision to misclassify Salinas and the Straight Time Employees as exempt employees was neither reasonable, nor was the decision to misclassify these employees as exempt made in good faith.

128. SESA's failure to pay Salinas and the Straight Time Employees overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

129. SESA's failure to pay Salinas and the Straight Time Employees all wages (including overtime wages) earned, due, and owed to them was neither reasonable, nor was the decision not to pay these employees all wages (including overtime wages) earned, due, and owed to them made in good faith.

130. SESA knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA, PMWA, and/or PWPCL.

131. SESA knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme that deprived the Straight Time Employees of premium overtime wages in violation of the FLSA and/or PMWA.

132. Likewise, SESA knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme that deprived the Straight Time Employees of all wages (including overtime wages) earned, due, and owed to them in violation of the PWPCL.

133. Indeed, SESA has been sued previously by employees for failing to pay them overtime wages, including for paying them under its same illegal straight time for overtime pay scheme. *See Garcia v. S.E.S.A. Fleet Servs., LLC*, No. 5:15-CV-00156 (W.D. Tex.).

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

134. Salinas incorporates all other paragraphs by reference.

135. Salinas brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

136. SESA violated, and is violating, the FLSA by employing the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying such non-exempt employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

137. SESA's unlawful conduct harmed Salinas and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

138. Accordingly, Salinas and the FLSA Collective Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

139. Salinas incorporates all other paragraphs by reference.

140. Salinas brings his PMWA claims as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P 23.

141. The conduct alleged violates the PMWA, 43 PA. STAT. §§ 333.101, *et seq*.

142. At all relevant times, SESA was an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

143. At all relevant times, SESA employed Salinas and the Pennsylvania Class Members as covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

144. The PMWA requires employers, like SESA, to pay employees, like Salinas and the Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* 43 PA. STAT. § 333.104(c).

145. SESA violated, and is violating, the PMWA by employing Salinas and the Pennsylvania Class Members in a covered enterprise for workweeks longer than 40 hours without paying such non-

exempt employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek. *See* 43 PA. STAT. § 333.104(c).

146.  SESA's unlawful conduct harmed Salinas and the other Pennsylvania Class Members depriving them of the overtime wages they are owed.

147.  Accordingly, Salinas and the Pennsylvania Class Members are entitled to recover their overtime wages in an amount equal to 1.5 times their regular rates of pay, prejudgment interest, all available penalties, as well as attorney's fees and costs. *See* 43 PA. STAT. § 333.113.

## COUNT III
### FAILURE TO PAY ALL WAGES UNDER THE PWPCL
### (PENNSYLVANIA CLASS)

148.  Salinas incorporates all other paragraphs by reference.

149.  Salinas brings his PWPCL claims as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P 23.

150.  The conduct alleged violates the PWPCL, 43 PA. STAT. §§ 260.1, *et seq*.

151.  At all relevant times, SESA was an "employer" within the meaning of the PWPCL. *See* 43 PA. STAT. § 260.2a.

152.  At all relevant times, SESA employed Salinas and the Pennsylvania Class Members as covered "employees" within the meaning of the PWPCL.

153.  The PWPCL requires employers, like SESA, to pay employees, like Salinas and the Pennsylvania Class Members, all wages (including overtime wages) due, earned, and owed to them for the work they performed on their regular payday. *See* 43 PA. STAT. § 260.3(a).

154.  SESA violated, and is violating, the PWPCL by failing to pay Salinas and the Pennsylvania Class Members all wages (including overtime wages) due, earned, and owed to them for the work they performed because SESA only paid Salinas and the Pennsylvania Class Members straight time for overtime.

155. Salinas' and the Pennsylvania Class Members' earned wages have remained unpaid for more than 15 days.

156. SESA's failure to pay Salinas and the Pennsylvania Class Members all wages due for the work they performed was not the result of any *bona fide* dispute.

157. SESA's unlawful conduct harmed Salinas and the other Pennsylvania Class Members depriving them of the overtime wages they are owed.

158. Accordingly, Salinas and the Pennsylvania Class Members are entitled to recover their unpaid overtime wages, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* 43 PA. STAT. § 260.9a.

## JURY DEMAND

159. Salinas demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Salinas, individually and on behalf of the Straight Time Employees, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing their written consent;

    b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

    c. An Order appointing Salinas and his counsel to represent the interests of the FLSA Collective and Pennsylvania Class;

    d. An Order pursuant to Section 16(b) of the FLSA finding SESA liable for unpaid back wages due to Salinas and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid wages;

e.  An Order finding SESA liable to Salinas and the Pennsylvania Class Members for unpaid overtime wages owed under the PMWA, as well as for any available penalties;

f.  An Order finding SESA liable to Salinas and the Pennsylvania Class Members for unpaid wages owed under the PWPCL, plus liquidated damages in an amount equal to their unpaid wages;

g.  A Judgment against SESA awarding Salinas and the Straight Time Employees all their unpaid wages, liquidated damages, and any other penalties available under the FLSA, PMWA, and/or PWPCL;

h.  An Order awarding attorney's fees, costs, and expenses;

i.  Pre- and post-judgment interest at the highest applicable rates; and

j.  Such other and further relief as may be necessary and appropriate.

Dated: August 22, 2023.

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: */s/ Michael A. Josephson*
Michael A. Josephson
TX Bar No. 24014780
Federal ID No. 27157
Andrew W. Dunlap
TX Bar No. 24078444
Federal ID No. 1093163
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

AND

Richard J. (Rex) Burch
TX Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

**ATTORNEYS FOR SALINAS AND THE STRAIGHT TIME EMPLOYEES**